IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EVIN B. BLAN,                                          CV 06-1435-MA

            Plaintiff,                          OPINION AND ORDER

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


            Defendant.

      RICHARD F. MCGINTY
      PO Box 12806
      Salem, OR  97301

            Attorney for Plaintiff

      KARIN J. IMMERGUT
      United States Attorney
      NEIL J. EVANS
      Assistant United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

      DAPHNE BANAY
      Special Assistant United States Attorney
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 901
      Seattle, WA  98104-7075

            Attorneys for Defendant

MARSH, J:

      The matter before the Court is plaintiff, Evin Blan's,

Social Security complaint (#2), brought under 42 U.S.C. § 405(g),

seeking review of the final decision of the Commissioner of

Page -1- OPINION AND ORDER

Social Security, denying his applications for disability

insurance benefits (DIB), and supplemental security income (SSI)

benefits.  42 U.S.C. § 401-433, 1381-1383f.  For the reasons that

follow, the Commissioner's decision is AFFIRMED, and this case is

DISMISSED.

## <u>BACKGROUND</u>

Blan filed his applications for DIB on April 7, 2003, and

SSI on March 31, 2003.  In both applications Blan alleged he

became disabled December 19, 1999, when he was approximately 35

years old, due to depression, degenerative disc disorder,

nocturnal seizure disorder, heart problems, fibromyalgia, a hip

condition, a shoulder condition, migraine headaches, and a mood

disorder.  He had worked in the past as a dishwasher, janitor,

waiter, surveyor helper, machine operator, and farm tractor

operator.

Blan's applications were denied initially and upon

reconsideration.  A hearing was then held on January 12, 2006 at

which Blan was represented by counsel.  On April 21, 2006 the ALJ

issued a written decision, finding Blan not disabled.  On

September 22, 2006, the Appeals Council denied Blan's request for

review, making the ALJ's April 21, 2006 opinion the final

decision of the Commissioner.

On appeal to this Court, Blan haphazardly lists eight

"assignments of error" which are properly categorized as follows:

Page -2- OPINION AND ORDER

(1) the ALJ erred by failing to find several of Blan's alleged
impairments to be "severe" at step two of the sequential
evaluation; (2) the ALJ erred by failing to evaluate whether
Blan's severe impairments met or equaled a listed impairment
independently, or in combination with Blan's other severe and
non-severe impairments, at step three of the sequential
evaluation; and (3) the ALJ's assessment of Blan's residual
functional capacity (RFC) is incomplete because it does not
include all of Blan's alleged work-related limitations, and
because it is premised on an erroneous evaluation of the
testimonial and medical evidence.  Blan's arguments are
addressed, below, under these categories.

### STANDARD OF REVIEW

The initial burden of proof rests on the claimant to
establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995).  To meet this burden, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Commissioner bears the burden of developing the record.
*DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the

findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912.  Each step is potentially dispositive.

Page -4- OPINION AND ORDER

Here, at step one the ALJ found Blan had not engaged in substantial gainful activity since his alleged onset date of disability. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Blan had severe fibromyalgia, degenerative disc disease with chronic low back pain, migraine headaches, and a mood disorder secondary to a medical condition. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three the ALJ found Blan's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Blan had the RFC to perform light exertional level physical activities, including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking 6 of 8 hours; sitting 6 of 8 hours; occasional stooping; no postural limitations or restrictions of hand or foot controls; avoidance of heights and ladders; and the limitations of simple and routine work, with no public contact. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Blan was unable to perform any of his past relevant work (PRW). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, the ALJ found Blan was able to perform other
work existing in significant numbers in the national economy,
such as small product assembler, electronics worker and packaging
line worker.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g),
416.920(a)(4)(v), 416.920(g).

## DISCUSSION

**I.   The ALJ did not commit the errors, at step two, that Blan
       alleges.  However, the ALJ did err by designating many of
       Blan's alleged impairments "severe" though substantial
       evidence does not support such a finding.**

Blan argues that the ALJ "failed to identify and include
[his] cervical degenerative disc disease, tachycardia, hip
condition, and bilateral shoulder condition as severe
impairments."  Further, Blan argues that the ALJ failed to
identify what, if any, work-related limitations were caused by
the impairments the ALJ did find to be "severe."

To prove he is disabled a claimant must first produce
medical evidence, "consisting of signs, symptoms, and laboratory
findings [not just the claimant's subjective statements]" showing
that he suffers from a "medically determinable impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."  *See* 20 C.F.R. §§ 404.1504, 404.1520(c), 416.904,
416.920(c); *see also Edlund*, 253 F.3d at 1159-60.  Next, he must

prove that his impairment is "severe," or that it significantly limits his ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. *See* SSR 96-3p.

In this case, the ALJ found Blan suffers from severe fibromyalgia, degenerative disc disease, chronic low back pain, migraine headaches and mood disorder secondary to a medical condition. He notes that Blan has reliable diagnoses for all of these impairments, yet the ALJ does not specify what work-related functional impairments are caused by which impairments. Mere diagnosis does not equate to "disability" as defined by the regulations. *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995)(stating that the mere diagnosis of an element of a listed impairment, at step three of the sequential evaluation, is not sufficient proof of disability).

In his RFC assessment the ALJ cites several reliable limitations to basic work activities that are clearly caused by

Page -7- OPINION AND ORDER

Blan's back problems, such as lifting, standing and walking restrictions.  Accordingly, I find substantial evidence to support the ALJ's finding that Blan's back problems do significantly limit his ability to do basic work activities. Yet, the ALJ does not point to substantial evidence that mood disorder or fibromyalgia significantly limit Blan's ability to do basic work activities.  To the contrary, the ALJ noted Blan's "sporadic history of medical compliance when antidepressant medication is prescribed" with regard to Blan's alleged mood disorder.  The ALJ also specifically states that the report by the doctor who diagnosed fibromyalgia "does not cite signficant physical limitations."  Thus, I do not find substantial evidence in the record to support the ALJ's inclusion of mood disorder and fibromyalgia as "severe" impairments at step two of the sequential evaluation.

    I also do not find any merit to Blan's argument that the ALJ erred by not finding the additional impairments of tachycardia, hip condition, and bilateral shoulder condition as severe impairments.  Blan does not specify what limitations he believes these impairments cause, much less direct this Court to reliable medical evidence to support the conclusion that they significantly limit his ability to perform basic work functions.

Accordingly, I modify the ALJ's finding, at step two to exclude mood disorder secondary to medical condition and fibromyalgia, and otherwise affirm his RFC assessment, as discussed in detail below. *See also Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)(holding that the district court is empowered to enter "a judgment...modifying...the decision of the Secretary, with or without remanding the cause for a rehearing.").

## II. The ALJ's step three finding was based on substantial evidence and sound legal reasoning.

According to Blan the ALJ erred by failing to evaluate whether Blan's severe impairments met or equaled a Listed Impairment independently, or in combination with Blan's other severe and non-severe impairments, considered so severe as to automatically constitute disability, without regard to any further consideration of claimant's age, education, and/or work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see also Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

The assessment of whether a claimant's impairments meet or equal a listed impairment must be based on medical evidence. *See* 20 C.F.R. §§ 404.1520(d), 416.1520(d). A social security claimant bears the burden of proving his impairment(s) meet or

Page -9- OPINION AND ORDER

equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  *Id*. at 683.  The mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability.  *See Key v. Heckler*, 754 F.2d 1545, 1549-50(9th Cir. 1985).

In this case, the ALJ thoroughly considered whether any of the impairments he found to be severe, at step two, met a Listed Impairment.  Blan's counsel did not advance any argument at the hearing level that Blan met or equaled the criteria for any Listed Impairment, nor does he here.  Accordingly, I reject Blan's arguments and I find the ALJ performed the evaluation required under the regulations, and that his step three finding is based on substantial evidence.

**III. The ALJ's assessment of Blan's residual functional capacity was based on substantial evidence, and sound legal reasoning.**

Blan contends the RFC assessment is incomplete because it does not include all of Blan's alleged work-related limitations, and because it is premised on an erroneous evaluation of the testimonial and medical evidence.  Unfortunately, Blan does not specify what work-related functional limitations he thinks the

ALJ should have included in the RFC assessment.  He only argues
that the ALJ erred by failing to include all of his unspecified
alleged limitations.

A claimant's RFC is an assessment of what he can still do
despite his limitations.  SSR 96-8p.  RFC is used at step four of
the sequential evaluation to determine whether a claimant is able
to do his past relevant work, and at step five to determine
whether he is able to do other work, considering his age,
education, and work experience.  The ALJ assesses a claimant's
RFC by reviewing all relevant evidence in the record, including
testimonial and medical source statements, to determine the
extent to which his medically determinable impairment(s),
including any related symptoms, such as pain, may cause physical
or mental limitations or restrictions that may affect his
capacity to do work.  *Id*.

> **A.   Testimonial Evidence**
>
> > **i.   Claimant's Testimony**

Blan alleges the ALJ failed to provide legally
sufficient reasons for finding him less than fully credible.
Blan points to the ALJ's introductory finding that Blan's
"statements concerning the intensity, duration and limiting
effects of these symptoms are not entirely credible," and argues
that this "boilerplate credibility finding is not sufficient and
does not constitute substantial evidence."  This argument

Page -11- OPINION AND ORDER

overlooks the myriad reasons cited throughout the ALJ's opinion for discrediting Blan's reports.

Throughout his opinion the ALJ repeatedly noted the inconsistency between Blan's alleged limitations and activites and the objective medical evidence.  For instance, the ALJ found that the sleep study Blan underwent did not find any evidence of obstructive sleep apanea or other sleep disorder, and EEG and MRI results do not evince the nocturnal seizure disorder Blan claims to have.  The ALJ stated that while Blan alleges a disabling mood disorder he did not undergo mental health treatment, he did not comply with prescribed antidepressant medication, and he only occasionally complained of depressive symptoms.  Further, the ALJ found the record reflected more successful treatment of Blan's allegedly chronic migraine headaches than Blan acknowledged. This Court also reasonably infers that the ALJ found Blan's subjective reporting about his use of alcohol and drugs to be less than fully credible, in light of Blan's wife's conflicting statements on this matter.  *See Magallanes v. Bowen*, 881 F. 2d 747, 755 (9th Cir. 1989)(stating the court may draw specific and legitimate inferences from the ALJ's decision).

I find these to be clear and convincing reasons, supported by substantial evidence, to reject Blan's testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir.

2001)(examples of clear and convincing reasons include a claimant's inadequately explained failure to follow prescribed course of treatment, medical evidence discounting the severeity of claimant's alleged impairments, claimant's inconsistent statements).

### ii.  Lay Witness Testimony

According to Blan, the ALJ did not assess the crediblity of his spouse, Nanette Blan.  Blan also contends that the ALJ did not assess the credibility of Blan's brother-in-law, Mathew Hanes.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence which the ALJ must take into account, "unless he expressly determined to disregard such testimony, in which case 'he must give reasons that are germane to each witness'".  *See Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996)(citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

However, testimony about the causes of a claimant's medical problems, such as that the claimant has a serious mental impairment as the result of a stroke, is beyond the competence of a lay witness and therefore does not constitute competent evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *cf. Nguyen,100* F.3d at 1467 (distinguishing lay witness

testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses).

In this case, the ALJ thoroughly reviewed Blan's wife, Nanette's, testimony, including that Blan is unable to stand or walk well, that he is only able to stand for 10 to 15 minutes at a time, that he falls several times a week, he has three to four migraine headaches per week lasting two to three days each, that he has difficulty finding things, is easily aggravated, and that he drinks two to three beers at a time and uses a little marijuana, and one of their adult children must stay with Blan when Nanette goes to work.  Most notably, Nanette claims she witnesses Blan having seizures in bed.

The ALJ chronicled the brain scans and sleep studies Blan has undergone, and found that none revealed any evidence of seizure activity, even when Blan had two episodes of "seizure-like activity" with an "unusual appearance" in the clinic.  In other words, the medical evidence directly contradicts Nanette's descriptions of Blan's seizure activity.  The ALJ also noted other contradictions between the record evidence and Nanette's testimony, such as that there is not any medical reason Blan would require the "virtual custodial care" Nanette claims he requires.  These are germane reasons to discredit a lay witness.

The ALJ also evaluated Blan's brother-in-law, Mathew Hanes', testimony.  He wrote:

> This source, who sees the claimant less than once a
> month, described him as rarely driving a motor vehicle,
> getting no exercise, experiencing disturbed sleep and
> taking naps regularly, doing virtually no household or
> yard maintenance, sometimes needing to be reminded to
> take medication, and having a very restricted
> lifestyle.

The ALJ also noted that Mathew said Blan can groom himself,
prepare simple meals, relies on his wife to handle finances, and
experiences some relief from pain medication.

The ALJ found Mathew's reports credible "to the extent
this individual has accurately reported his observations of the
claimant's behavior and activities."  In other words, the ALJ
credited things Mathew could actually atest to when he sees Blan
once a month (such as that he can prepare a meal, that he needs
to be reminded to take medication, that he can groom himself),
but discredited things one could not know from infrequent visits
(such as whether Blan has sleep difficulty, whether he ever helps
with housework, or how frequently he leaves the house).  The
infrequency of Mathew's contact with Blan was a germane reason
for discrediting his reports that were not based on his own
observations.

In light of the foregoing, I do not find any error with the
ALJ's assessment of the lay witness testimony in this case.

**B.   Medical Evidence**

According to Blan, the ALJ made numerous mistakes with the medical evidence in this case, as discussed below.

### i.   Clifford D. Lynam, M.D.

Clifford D. Lynam, M.D., is a Psychiatrist who performed a mental health evaluation of Blan on August 25, 2004. Blan and his wife told Dr. Lynam Blan had a seizure disorder, anxiety, depression, multiple physical problems, and a history of substance abuse.  Dr. Lyam diagnosed "mood disorder due to one of several medical conditions (fibromyalgia, chronic pain, seizure disorder, sleep apnea).  Under the "Problem List/ Treatment Plan" section of the evaluation Dr. Lynam indicated that he was "delaying any psychopharmacologic intervention for this patient" because Blan was "in the midst of workup for sleep apnea versus seizure disorder."  Dr. Lynam also put the following statement in this section of his evaluation:

> As this patient is clearly physically, severely
> disabled at this time, Social Security Disability is
> totally appropriate and necessary for financial
> support.

According to Blan, the ALJ should have afforded this opinion "controlling weight" and found Blan to be diabled on this basis.  Blan is mistaken.  First, although Blan did continue to have a handful of additional visits with Dr. Lynam, Dr. Lynam

Page -16- OPINION AND ORDER

issued this statement after his first evaluation of Blan.
Accordingly, this statement is properly assessed as the opinion
of a nontreating, examining physician, and the ALJ was required
to evaluate it based on: (1) medical specialty and expertise with
the Social Security rules, (2) supporting evidence in the case
record, (3) supporting explanations provided by the physician or
psychologist, and (4) any other relevant factors.  20 C.F.R. §§
404.1527(f), 416.927(f).  It is also important to note here that
a doctor's statement about a claimant's ability to work is not a
proper medical source opinion, but an administrative finding
reserved to the Commissioner.  SSR 96-5p.  Thus, a statement by a
doctor that a claimant is unable to work is not accorded much
weight.  *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

        The ALJ properly applied this standard to Dr. Lynam.
The ALJ stated that, generally, he accorded Dr. Lynam's opinion
"little" weight.  Further, the ALJ found the opinion even less
persuasive because it was based entirely on Blan's physical
problems, assessment of which was outside Dr. Lynam, a
Pyschiatrist's, area of speciality.  Next, the ALJ correctly
observed that Dr. Lynam's opinion was not supported by objective
evidence.  The mental status examination did not include any
objective findings, much less a physical examination, but was
based on Blan and his wife's unreliable reports.  Yet Dr. Lynam's

Page -17- OPINION AND ORDER

opinion was that Blan was physically disabled.  The ALJ further
noted that clinical notes from later visits
"inadvertently...demonstrate signficiantly greater functional
abilities than alleged in multiple areas."

There is not any merit to Blan's argument that the ALJ
did not realize Dr. Lynam was a physician, not just a
psychologist.  The ALJ specifically refers several times to Dr.
Lynam being a medical doctor.

Blan argues that the ALJ wrongly concluded that Dr.
Lynam's opinion was not based on objective medical evidence, such
as signs, symptoms and laboratory findings.  According to Blan,
Dr. Lynam's mental status exam identified numerous 'signs' to
support his diagnosis.  Yet, the diagnosis of mood disorder is
not at issue here.  The issue is Dr. Lynam's opinion that Blan is
physically disabled.  Dr. Lynam did not identify any signs to
support this opinion.  He did not even conduct a physical
examination of Blan.

Finally, Blan argues that the ALJ "mischaracterized"
Dr. Lynam's November 2, 2004 progress note in which Dr. Lynam
stated that Blan arrived soaking wet and announced he had just
walked 9 blocks to the appointment in the rain.  The ALJ noted
that Blan intended to walk the 9 blocks back to his car, too, and
that his ability to walk this distance was "far greater than

reported and inconsistent with all allegations." Blan contends the ALJ wrongly concluded from this progress note that Blan did not complain of "overt pain symptoms" during the visit, even after having walked 9 blocks. Blan points to Dr. Lynam's parenthetical in the "objective" section of the progress note that indicates Blan stated his pain was a 7 out of 10 after the walk. Even if the ALJ's statement could be interpreted as a mischaracterization of Dr. Lynam's note, this statement was not listed as a reason to reject Dr. Lynam's above disability opinion, and therefore I find it was inconsequential to the ALJ's determination in this case and therefore that it constitutes harmless error, at most. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error was nonprejudicial).

### ii. Joseph Whitson, D.O.

Dr. Joseph Whitson appears to have been one of Blan's treating physicians in 2003 and 2004. The ALJ only mentions him a few times. He notes that Dr. Whitson referred Blan to Sean Shim, M.D., for a fibromyalgia consult in December 2004. The ALJ also states that Dr. Whitson "declined [Blan's] request for a note saying he was disabled," and that his chart notes are consistent with the residual functional capacity the ALJ assessed for Blan.

Blan argues that the ALJ mischaracterized Dr. Whitson's actual opinion, which Blan contends was not that he refused to endorse disablity, but that he wanted Blan to undergo a neck and back pain evaluation first, and to review the "disability evaluation" performed through the "DHS department" wherein an unidentified doctor told Blan he was not disabled.  The Commissioner argues that on balance the ALJ's characterization of Dr. Whitson's statement was harmless error at most.  I disagree with both parties.

The ALJ's characterization is not erroneous whatsoever. It is true that Dr. Whitson declined to write Blan a note stating that he was disabled and unable to work.  Blan is correct that Dr. Whitson indicated before he could consider doing so he needed the above listed information.  However, the fact remains that according to the record Blan did not ultimately comply with Dr. Whitson's conditions, and therefore Dr. Whitson did not write the letter.

Blan argues that "a review of the record shows that Dr. Whitson actually did write a note, or more accurately a 'letter,' taking Blan off of work."  In fact, Dr. Whitson's August 27, 2003 chart note indicates, "I told the patient I would write a letter recommending that he be excused from work until he sees Dr. French."  That chart note also indicates that Blan's insurance

had approved the referral to Dr. French, and that Blan had been advised to call Dr. French and get an appointment, and then call Dr. Whitson back to tell him the appointment date.  In view of this information, the "excuse from work" note had a very short shelf-life, and can not reasonably be viewed as evincing Dr. Whitson's intention to endorse Blan's disability application.

Finally, Blan contends that Dr. Whitson "prescribed" a disabled parking permit, which shows Dr. Whitson "did consider Blan disabled."  Again, it is Blan who mischaracterizes what the record actually states, not the ALJ.  In a March 8, 2003, chart note Dr. Whitson states,

> [Blan] says he can't walk 200 feet.  Requests I fill out a handicap parking permit for him.  I did fill this out.  Return to Clinic in 2-3 weeks, sooner if problems progress.

The Commissioner now claims the ALJ committed harmless error by not mentining this.  I disagree.  The requirements for obtaining a disabled parking permit in Oregon do not even approximate the requirements for establishing "disability" under the Social Security Act.  *See* Oregon Revised States 801.233 ("disabled person" means, *inter alia*, "a person who has severely limited mobility becuase of paralysis or the loss of use of some or all of the person's legs or arms").  Accordingly, the ALJ did not err by failing to mention that Dr. Whitson gave Blan the benefit of

Page -21- OPINION AND ORDER

the doubt in allowing this parking permit, even though Blan's allegations regarding how far he could walk were directly contradicted by the record.

### iii. Nate Bachtell, M.D.

Blan alleges the ALJ erred by failing to announce how much weight he affored Dr. Bachtell's assessment of Blan's functional limitations. Presumably, Blan thinks the ALJ rejected Dr. Bachtell's findings, though Blan does not specify which ones. I do not find any merit to this argument because the ALJ clearly credited all of Dr. Bachtell's findings and noted that they were consistent with Dr. Whitson's chart notes.

### iv.  Howard Johnson, M.D.

Though Blan does not identify him by name, he claims the ALJ erred by referring the vocational expert who testified at the hearing to Dr. Johnson's residual functional capacity assessment evaluation. Blan argues the ALJ erroneously based his RFC assessment on this non-examining state agecy physician's assessment, performed July 18, 2003. There is not any merit to this argument. A review of Dr. Johnson's RFC evaluation shows he assessed the same limitations the ALJ included in his RFC assessment, which were also assessed by Dr. Bachtell and consistent with Dr. Whitson's findings.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _27 day of September, 2007.


                              /s/  Malcolm F. Marsh
                              Malcolm F. Marsh
                              United States District Judge